## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| HEIVER E. MONTOYA NORENA, | § | |
| Plaintiff | § | |
| | § | |
| v. | § | No. 4:26-CV-_____ |
| | § | |
| | § | |
| UNITED STATES OF AMERICA; | § | |
| and JOHN DOE AGENTS A–E, | § | |
| Individually and. | § | |
| in their official capacities, inclusive | § | |
| Defendants | § | |

## COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Heiver E. Montoya Norena ("Plaintiff" or "Mr. Montoya"), alleges as follows:

## I.    INTRODUCTION

1.    On July 29, 2023, without provocation, United States Custom and Border Patrol ("USCBP")[1] agents unlawfully detained, concussed the brain and tore the rotator cuff of Mr. Montoya, an American citizen who had just re-entered the United States with his family after a brace--removal and teeth cleaning appointment in Mexico, As a result of this unlawful conduct, Mr. Montoya suffered significant physical injuries, pain and emotional distress.

---

[1] USCBP is an agency of the United States of America.

2.      The use of force against Mr. Montoya was unreasonable and excessive and was not employed to defend against bodily injury or deadly force, as Mr. Montoya, his nine-year-old son and his wife posed neither.

3.      After they hurt him, they took his shoes and jewelry and locked him in a room In the facilities of the USCBP near the Progresso Texas international bridge in Progresso, Texas for at least an hour. When agents returned, an agent requested that an ambulance transport Plaintiff to a hospital for emergency care. Despite his evident injuries, to date the government of the United States of America has not provided Mr. Montoya redress for the injuries Plaintiff suffered and continues to suffer. He submits these claims under the Federal Tort Claims Act (FTCA) to vindicate his rights.

4.      This action is refiled following administrative closure of a timely filed prior action (4:25-CV-03496) due solely to denial of an *in forma pauperis* application[2]. Plaintiff invokes equitable tolling to preserve all claims originally filed within the statute of limitations.

## II.
## JURISDICTION & VENUE

5.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question), 1346(b) (the defendant is the United States), and 2671–2680 as well as under the Fourth and Fifth Amendments to the United States Constitution.

---

[2] 4:25-mc-01426

6.    Venue is proper under 28 U.S.C. § 1402(b) because the acts occurred in the Southern District of Texas and Plaintiff resides in this judicial district.

## III.
## PARTIES

6.  Plaintiff is a United States citizen and resides in Tomball, Texas.

7.  Defendant UNITED STATES OF AMERICA is subject to suit under the FTCA. Service shall be made pursuant to Fed. R. Civ. P. 4(i).

8.  Claims against USCBP proceed against the United States of America, but USCBP is named for factual reference.

9.  Defendants JOHN DOE AGENTS A–E are USCBP officers who personally participated in the actions alleged herein.[3] They are sued individually for constitutional violations under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

## IV.
## EXHAUSTION

10.  Plaintiff timely filed an administrative claim with USCBP (SF-95), on October 26, 2024 which was not resolved. Plaintiff mailed a claim by certified or registered mail to defendant period the claim was received was received and

---

[3] Defendant John Doe Agents A-E at all times relevant to this matter were officers or agents of the USCBP. The true names of these agents are currently unknown. These defendants were on duty on July 29, 2023 at the Progresso USCBP facilities. These defendants include but are not limited to the border patrol agents who slammed Mr. Montoya's chest into onto a table, the border patrol agent(s) who lifted him by his arms while he was restrained from the table, the border patrol agent(s) who pulled him a forced him into a room, the border patrol agent(s) forcibly removed and broke his jewelry, the border patrol agents who forced and pressed his head into a wall, and the border patrol agents who caused his contusions, concussion, and tore his rotator cuff. At all times these Defendants were acting in an official capacity and under the colour of law.

acknowledged. More than six months have passed since the government received the claim. Plaintiff has satisfied the prerequisites of 28 U.S.C. § 2675(a).

## V.
## Equitable Tolling and Savings Grounds

11.    This action was timely commenced within the applicable statute of limitations. Plaintiff filed his original Complaint in this Court on July 29, 2025, the final day of the applicable limitations period. The Clerk accepted the filing and assigned a civil action number. The filing therefore constituted a timely commencement of this action under Fed. R. Civ. P. 3.

12.    The subsequent administrative closure was procedural, not merits-based. The Clerk separately assigned a miscellaneous case number for Plaintiff's application to proceed *in forma pauperis*. When the *in forma pauperis* application was denied, the Court administratively closed the case. The Court did not dismiss the action on the merits, did not enter a judgment of dismissal with prejudice, and did not adjudicate any substantive claim.

13.    Plaintiff, who just recently gained employment, tendered the funds necessary to pay the filing fee on January 6, 2026. When counsel attempted to remit payment through the CM/ECF system under the previously assigned civil action number, the system would not permit payment. Counsel then contacted the Clerk's Office and the Finance Office of the United States District Court for the Southern District of Texas, at which time counsel first learned that the case had been

administratively closed following denial of the in forma pauperis application. Upon learning of the administrative closure, Plaintiff acted promptly and diligently to refile this action.

14. Extraordinary circumstances prevented timely payment of the filing fee. At the time of the original filing and throughout the relevant period, Plaintiff was suffering from severe and disabling injuries caused by Defendants' conduct, including a concussion and a torn right rotator cuff. These injuries substantially impaired Plaintiff's ability to work, earn income, and generate funds necessary to pay the filing fee.

15. Plaintiff is a right-handed certified HVAC/R repairman whose occupation requires physical strength, mobility of the shoulders and arms, and cognitive clarity. As a direct result of Defendants' conduct, Plaintiff was unable to perform the essential functions of his job, was terminated, and remained unable to work for a prolonged period. Plaintiff's financial incapacity was not the result of neglect, but of physical injury inflicted by Defendants.

16. Equitable tolling is warranted under federal law. Equitable tolling applies where a plaintiff has pursued his rights diligently and extraordinary circumstances beyond his control prevented timely compliance. Here, Plaintiff timely filed suit, diligently pursued his claims, and was prevented from completing payment of the filing fee by disabling injuries, loss of employment, and lack of notice of the administrative closure.

17.    Defendants had timely notice of Plaintiff's claims through Plaintiff's administrative FTCA claim and may have had notice of the filing of the cause of action. Tolling preserves, rather than revives, claims that were already timely asserted and does not impair Defendants' ability to defend on the merits. Defendants suffer no prejudice from tolling.

18.    **Equity bars these Defendants from benefitting from injuries they caused.** Defendants should not be permitted to benefit from a statute-of-limitations defense where their own alleged misconduct caused the physical injuries, loss of employment, and financial incapacity that prevented Plaintiff from paying the filing fee before administrative closure.

19.    Accordingly, all limitations periods are equitably tolled from July 29, 2025 through the date of refiling, and this action is timely under principles of equity, fairness, and justice.

VI.
THE FACTS

**The Montoya Family Trip to Nuevo Progresso**

20.    On July 29, 2023, Plaintiff, his wife and  their nine-year-old son (collectively the 'Montoya Family") drove[4] to Nuevo Progresso, Tamaulipas, Mexico for Mr. Montoya's dental appointment at Cadi Dental Cadi Dental removed Mr. Montoya's braces, cleaned his teeth and  whitened them too.

---

[4] They road in their Volkswagen Passat (the " Volkswagen").

21.     As of July 29, 2023, Mr. Montoya was a right-handed certified HVAC/R repairman whose job requires the lifting of heavy equipment and machines, the use of tools.

22.     His ability to perform that work was entirely dependent on his cognitive abilities as well as the strength and mobility within his within his shoulders arms and wrists.

23.     After his appointment, the Montoya Family shopped and ate in Nuevo Progresso. When it was time to drive back to the Houston-area, Mrs. Montoya drove their Volkswagen from Nuevo Progresso to the Nuevo Progresso International Bridge.

24.     They drove over the bridge and were stopped at the USCBP border kiosk.

25.     At the kiosk, a 30-something Hispanic male USCBP officer ("*Officer A*"), asked if they were United States citizens. Mr. and Mrs. Montoya responded "Yes". *Officer A* then asked them for their documents.

26.     Mr. and Mrs. Montoya gave their drivers licenses to *Officer A*, as well as their son's United States birth certificate. After *Officer A* scanned their documents, and asked where they lived. They answered "Houston". He did not give Mrs. Montoya back her license.

27.     *Officer A* asked Mr. Montoya if he had recently attempted to purchase a firearm. He responded, "I really don't have to answer this question".

28.     *Officer A* told Mrs. Montoya to drive to the search area because the USBCP was going to search the Volkswagen.

29.     Mrs. Montoya asked the officer what the reason was for the search. *Officer A* did not respond and gave no further instructions to the Montoya family at that time.

30.     Mrs. Montoya followed *Officer A*'s instruction and drove the Volkswagen directly to the search area.

31.     Mr. Montoya opened the front passenger door of the Volkswagen and got out of the car on the passenger's side where he had been sitting.

32.     He closed the passenger side front door and stood next to the Volkswagen while he watched nine-year old son, who had been seated in the back seat on the driver's side of the car.

33.     Their child was nervous and was struggling to unbuckle his seatbelt.

34.     Mrs. Montoya moved towards her son to help him with his seat belt while saying to the officers present, "he's having trouble with the seat belt".

35.     Mr. Montoya, too, was concerned about and focused his attention on his wife and son as he stood next to their car.

36.     The Montoyas were neither impeding nor objecting to a search of the Volkswagen.

37.      the officers had not begun to search the vehicle.

**Officers Attack Mr. Montoya as he Waits for his Family**

38.     While Mr. Montoya was watching his son and wife, a 30-something African American USCBP officer ("Officer B") yelled at Mr. Montoya, ordering him to

immediately stand behind a metal table that was approximately six feet away from Mr. Montoya's side of the Volkswagen.

39.    Because Mr. Montoya was focused on his son's struggle to get out of the Volkswagen and his wife's efforts to help him, he hesitated in moving, but glanced towards Officer B, while Mrs. Montoya said, as to her husband, "he's waiting for us".

40.    During this tragic and unnecessary encounter, Mr. Montoya never reached for or brandished a weapon (or anything resembling a weapn) and was carrying nothing that could be considered a weapon at this time.

41.    Mr. Montoya was not "verbally aggressive" with the officers.

42.    The officers found nothing that could be considered a weapon.

43.    Without provocation or justification, two officers (one Hispanic and approximately 30-50 years of age) ("Officer C") and Officer B suddenly seized Mr. Montoya.

44.    They forcefully grabbed him on each side and slammed him – chest first - onto the metal table, causing him great pain.

45.    Officers B and C put their body weight on top of Mr. Montoya on each side of him. They then forcefully pulled his arms and hands, behind his back and handcuffed him.

46.    . After handcuffing him, Officers B and C moved Mr. Montoya up off of the table by him by his arms, wrists, hands and the handcuffs and pulling him upward and then backward (beyond the normal range of movement for arms, hands and wrists) off of

the table causing immediate and severe pain. He told emergency room personnel that they did it real hard'."

47. As they did so, he heard and felt his shoulder pop.

48. He felt extreme pain.

49. He begged them to stop and asked, "why are you doing that?"

50. They ignored his pleas and separated him from his family.

51. Two officers – one female ("Officer D") and an officer positioned in one of the kiosks ("Officer E") ordered Mrs. Montoya, without explanation, to leave the area immediately. Officer D searched the Volkswagen and deemed it "...okay".

## Without Justification USCBP Officers Isolate, Detain and then Hurt Mr. Montoya Again

52. Though Mr. Montoya was shocked and distressed by the officers' conduct, he did not resist them.

53. Nevertheless, Officers B and C forcibly pulled Mr. Montoya into a camera-less room within the USCBP building, in which they detained him, without explanation, for approximately an hour.

54. There, Officer B, without provocation or justification, and while Mr. Montoya was still handcuffed, shoved the right side of Mr. Montoya's head against the wall three times and then pressed his hand against the left side of Mr. Montoya's head, thus squeezing Mr. Montoya's head against the wall.

55.     The impact against the wall, and the officer's squeezing of Mr. Montoya's head caused him immediate severe pain, and an acute concussion.

56.     Had they asked him to remove his jewelry, he would have. Instead they forcibly removed his ring(s) and bracelet , lacerated and scratching Mr. Montoya's hands, arms and wrists in the process.

57.     In the course of pulling on his arms and writsts, they pulled his hands and arms (beyond their normal range of motion) from behind causing more injury and pain to his already injured shoulder and wrists. They eventually sat him down on a bench, removed his sneakers and necklace.

58.     Mr. Montoya could not move his arm and his head hurt badly.

59.     They left the room and took the sneakers and necklace with them.

60.     Mr. Montoya heard the officers laughing and talking after they left the room in which he was detained.

61.     Several minutes later, Officers B and C returned to the detention room. They ordered him to stand up, they gave him back his necklace and sneakers, and said he had to leave.  He asked where his family was, and they told him his family had left and they were no longer here.

62.     As he had no phone, and did not know where his family had gone, he could not contact them.

63.     Mr. Montoya did nothing to warrant the treatment he received on July 29, 2023,

64.    The USCBP  never charged Mr. Montoya with anything.

## Emergency Care for Mr. Montoya

65.    Though he told the officers he was injured and needed medical attention, no USBCP officers tended to his injuries.

66.    He asked an officer to call an ambulance. An ambulance transported him to the Knapp Medical Center, where he received emergency care.

67.    The medical personnel who treated him diagnosed his injuries to include a "probable torn biceps pulley", "abrasion, wrist w/o infection bilateral", "contusion, wrist bilateral", right shoulder strain" "marked tenderness localized to the area of the right shoulder..., and a concussion.

68.    His medical records reflect that he was "clearly upset" and that  he was advised to "see an orthopedist when he gets home to Houston" and to follow up with "Primary Doctor for further evaluation and care". The Knapp emergency room proscribed pain medication.

## The Extent and Consequences of Mr. Montoya's July 29, 2023 Injuries

69.    Through the date of the submission of this claim, Mr. Montoya continues to suffer, every day, from prolonged post-concussion symptoms resulting from his July 29 head injuries, including, but not limited to:

Heightened light sensitivity, easily upset by bright light
Diminished interest in his pre-injury hobbies and family activities
Severe headaches which worsen during the day

Sleep disturbance
Cognitive difficulties
Fatigue
Irritability
Decreased quality and frequency of interpersonal interaction
Easy anger and irritability
Weight loss
Diminished vision
Feeling depressed
Feeling frustrated

70.    In the ensuing two years since he was attacked, Mr. Montoya has endured shoulder pain which has reached level 9 and 10 on a scale of 1 to 10 when the pain is at its worst.

71.    As a direct result of the manner in which the officers pulled on his arms and hands and wrist, Mr. Montoya suffered tears in his right rotator cuff which have caused persistent and severe pain in his shoulder – despite undergoing physical therapy - and prevented him from working.

72.    He, has lost at least $90,000 in earnings since July 29, 2023 given his condition. His earning capacity as an HVAC/R repairman has been diminished by at least $72,000/year for the remainder of his working life – 19 years. His lost earning capacity as a certified HVAC/R repairman is $1.368 million.

73.    He requires long-term treatment future for the shoulder injury as well as the consequences of his concussion.

74.    Mr. Montoya was held against his will and mistreated physically and mentally without any justification. The sudden, forceful, intentional unprovoked and unjustifiable actions of the USCBP officers traumatized Mr. Montoya.

75.    Mr. Montoya experienced severe emotional distress, anxiety and depression as a result of the defendants unlawful conduct. They intentionally separated him from his family. They injured his chest, wrists and shoulders, humiliated and handcuffed him in front of his family. He felt violated, vulnerable, and humiliated. He felt afraid and scared of what would happen both to himself and to his family.

*Physical Injuries*

76.    The total amount of your personal injury claim includes the lost earnings to date his present and future medical expenses for the treatment of his internal brain injury and his shoulder paid his lost future earning capacity and his past and future pain and suffering.

**Property damage**

77.    While hurting Mr. Montoya, the officers broke Mr. Montoya's bracelet in the. The bracelet is not repairable.

78.    Doe Agents A-E were acting within the scope of employment, thereby giving rise to the liability of the United States of America, pursuant to the principles of respondeat superior and by act of Congress pursuant to 28 USC section 1346.

79. At the time the USCBP officers hurt Mr. Montoya, none of them were in danger of bodily harm from Mr. Montoya sufficient to justify the use of deadly force- or of any force- especially since plaintiff had no deadly weapons and posed no threat to anyone.

## VI.    JURY DEMAND

80. Plaintiff hereby respectfully request that a trial by a jury ensue as to all of the non- FTCA issues presented herein.

## VII.    CAUSES OF ACTION

### First Cause of Action: FTCA: Negligence
### (United States of America)

81. Plaintiff incorporates and realleges each of the allegations contained in the preceding paragraphs herein.

82. Defendants had a duty to use reasonable care and interacting with Mr. Montoya and with any citizen encounters.

83. Defendants had a duty to use reasonable care in planning coordinating and executing their inspection of vehicles entering the United States.

84. Defendants also had a duty to use reasonable care in the use of force, and the communication of orders, commands, and instructions to members of the public They also had a duty to use reasonable care in the handling of persons in their custody. They had a duty to use reasonable care in moving Mr. Montoya from one place to another. The Government had a duty to train its officers in the execution of their duties.

85.    Defendants breached these duties by engaging in unnecessarily touching, grabbing lifting, pulling slamming Mr. Montoya, by failing to communicate clearly and effectively with Mr. Montoya, by detaining Mr. Montoya at all, by failing to intervene as others harmed Mr. Montoya, and by causing Mr. Montoya physical injury and property loss, when he was unarmed and posed no threat to the officers. The USCBP further breached its duties to Mr. Montoya by negligently trained and supervised its officers, directly causing the injuries described.

86.    Defendants further breached their duties of reasonable care by harming Mr. Montoya without the need to do so and failing to stop when he audibly expressed the pain the Defendants were causing him.

87.    Defendants' actions caused Mr. Montoya substantial harm, pain, suffering, and injury, and impaired his ability to provide for himself and his family. The actions were outrageous and intolerable, and unreasonably or intentionally disregarded a substantial risk of harm to Plaintiff.

88.    Defendants acted in their official capacity and in the scope of employment is border patrol agents of the United States of America.

89.    Defendants' actions were substantial factor in an approximate cause of harm to Mr. Montoya, and plaintiff seeks all damage is available under the law, including Punitive damages for the harm caused by Defendants.

**Second Cause of Action: FTCA: False Imprisonment**
**(United States of America)**

90.    Plaintiff incorporates and realleges each of the allegations contained in the preceding paragraphs herein.

91.    Defendants intentionally deprived Plaintiff of his freedom of movement by force, threats of force, menace and detention.

92.    Defendants detained Mr. Montoya, or contributed to his detention, in their official capacity and in the scope of their employment as officers as USCBP officers of the United States of America.

93.    Plaintiff was not allowed to leave for an appreciable time.

94.    Plaintiff did not consent to be imprisoned.

95.    Defendants' actions were a substantial factor in causing harm to Mr. Montoya, and he suffered damages in an amount to be proven at trial.

## Third Cause of Action: FTCA: Battery
### (United States of America)

96.    Plaintiff incorporates and realleges each of the allegations contained in the preceding paragraphs herein.

97.    Defendants created a reasonable apprehension in Mr. Montoya of immediate harmful or offensive contact. Specifically, Defendants bound Mr. Montoya, forcibly lifted him, his arms up, causing his rotator cuff to tear, slammed his chest into onto a table in and on at least three different times pushed his head into a wall when Mr. Montoya opposed no threat and was compliant with their commands.

98.    Defendants acted with an intent to cause harmful or or offensive contact with Mr. Montoya.

99.    The intended harmful or offensive contact did occur. Specifically, Defendants caused Mr. to have a concussion and a torn rotator cuff, among other injuries, without just cause.

100.    Defendants' actions were intended to cause harm, their actions were outrageous and intolerable, and they intentionally disregarded a substantial risk to Plaintiff.

101.    Defendants acted without privilege or Mr. Montoya's consent.

102.    Defendants acted in their official capacities and in the scope of their employment as border patrol agents of the United States of America.

103.    Defendants' actions were a substantial factor in causing harm to Mr. Montoya, and Plaintiff seeks all damages available under the law, including punitive damages for the harm caused by a Defendants.

## Fourth Cause of Action: FTCA: Assault
### (United States of America)

104.    Plaintiff incorporates and realleges each of the allegations contained in the preceding paragraphs herein.

105.    Defendants created a reasonable apprehension, in Mr. Montoya that he would endure  until you have immediate harmful or offensive contact. Specifically, even

though Mr. Montoya was no threat and was compliant, Defendants tore his rotator cuff and concussed his brain, among other injuries.

106.    Mr. Montoya reasonably believed that he was going to be seriously physically harmed by Defendants or worse.

107.    Defendants acted without privilege or Mr. Montoya's consent.

108.    Defendants acted in the official capacity in the scope of their employment as border patrol agents of the United States of America.

109.    Defendants' actions were intended to cause harm, their actions were outrageous and intolerable, and they intentionally disregarded a substantial risk of harm to Mr. Montoya.

110.    Defendants' actions were a substantial factor in causing harm to Mr. Montoya, and Plaintiff seeks all damages available under the law, including punitive damages, for the harm Defendants caused.

### Fifth Cause of Action: FTCA: Aggravated Negligence
### (United States of America)

111.    Plaintiff incorporates and realleges each of the allegations contained in the preceding paragraphs herein.

112.    Defendants acted wilfully and wantonly and and with reckless indifference to the safety of Mr. Montoya and his family when they injured his arms and shoulder pressed his head into a wall.

113.    Defendants' actions created an unreasonable risk of harm to Mr. Montoya.

19

114.    Defendants' actions were intended to cause harm, their actions were outrageous and intolerable, and they intentionally disregard the risk that their behavior posed a substantial risk of harm to Mr. Montoya.

115.    The risk of harm created by Defendants was great because Mr. Montoya was unarmed, compliant and non-threatening.

116.    Defendants acted in their official capacity and in the scope of their employment as border patrol agents of the United States of America.

117.    Defendants' actions were a substantial factor in causing harm to Mr. Montoya, and Plaintiff seeks all damages available under the law, including punitive damages, for the harm Defendants caused.

## Sixth Cause of Action: FTCA: Intentional Infliction of Emotional Distress (United States of America)

118.    Plaintiff incorporates and realleges each of the allegations contained in the preceding paragraphs herein.

119.    Defendants, engaged in extreme and outrageous conduct that transcended the bounds of human decency. Specifically, Defendants handcuffed an unarmed and compliant Mr. Montoya, forcibly lifted his arms from behind in a way that injured and tore his rotator cuff and caused other injuries, and forcibly pressed his head into a wall while detaining him without justification.

120.    Defendants intended to cause and did cause Mr. Montoya to experience serious physical injury and emotional with a reckless disregard of the probability that Mr. Montoya would suffer injury.

121.    Plaintiff suffered severe emotional distress as a result of the Defendants, reckless and intentional outrageous conduct.

122.    Defendants' actions were intended to cause harm, their actions were outrageous and intolerable, and they intentionally disregarded a substantial risk of harm to Plaintiff.

123.    Defendants acted in their official capacity and then the scope of their employment as border patrol agents of the United States of America.

124.    Defendants' actions were a substantial factor causing harm to Mr. Montoya, and Plaintiff seeks all damages available under the law, including punitive damages for the harm caused by Defendants.

## Seventh Cause of Action: Bivins: Excessive Force
## (John Doe Agents A-E)

125.    Plaintiff incorporates and realleges each of the allegations contained in the preceding paragraphs herein.

126.    This cause of action is based upon *Bivins v. Six Unknown Federal Narcotics Agents*, 403 US 388 (1971).

127.    Plaintiff, Mr. Montoya, had a Fourth Amendment right to be free from a reasonable searches and seizures, including the use of excessive force.

128.    Defendants violated that right by hurting Mr. Montoya in the manner described above.

129.    John Doe Agents A-E violated that right by injuring Mr. Montoya.

130.    These agents were not acting a good faith, were acting under colour of law, and violated Mr. Montoya's Fourth Amendment rights.

131.    John Doe Agents A-E are sued in their individual capacities for the purposes of this cause of action.

132.    These Defendants' actions were the legal, foreseeable, and approximate cause of Plaintiff's injuries, and caused damages in an amount to be proved at trial.

### Eighth Cause of Action: Bivins Action: Illegal Arrest
### (John Doe Agents A-E)

133.    Plaintiff incorporates and realleges each of the allegations contained in the preceding paragraphs herein.

134.    This cause of action is based upon *Bivins v. Six Unknown Federal Narcotics Agents*, 403 US 388 (1971).

135.    Plaintiff had a Fourth Amendment right to be free from unreasonable, searches and seizures, including unlawful arrest.

136.    Defendants violated that right by cuffing and detaining Plaintiff despite 1) Plaintiff having done nothing illegal at any time and 2) Defendants having no reasonable suspicion or probable cause that any crime had been committed.

137.    These Defendants were not acting in good faith, were acting under colour of law, and violated Plaintiff's Fourth Amendment rights. By subjecting Plaintiff to arbitrary abuse and punitive conduct, they violated his due process rights under the Fifth Amendment to the United States Constitution.[5]

138.    These Defendants are sued in their individual capacities for the purposes of this cause of action.

139.    Defendants' actions were the legal, foreseeable, and proximate cause of Plaintiff's injuries, and caused damages to him in an amount to be proven at trial.

### Ninth Cause of Action: Bivens Action: Exemplary Damages
### (John Doe Agents A-E)

140.    Plaintiff incorporates and realleges each of the allegations contained in the preceding paragraphs herein.

141.    By intentionally injuring Mr. Montoya, without justification, the Defendants' actions were intended to cause harm. Their actions were outrageous and intolerable, and the intentionally or recklessly disregarded a substantial risk of harm to Plaintiff.

142.    The Defendants' despicable conduct resulted in Mr. Montoya's injuries and plaintiff suffered severe emotional harm as a result. Consequently, the Defendants are liable for punitive damages.

---

[5] Plaintiff acknowledges that in *Egbert v. Boule*, 596 U.S. ___ (2022), the Supreme Court restricted this Court's ability to afford *Bivens* remedies in litigation in which plaintiffs have complained of abuse by agents of the CBP. Plaintiff asserts its Bivens claims to preserve them for appellate review.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court grant Plaintiff Relief as follows: damages under the FTCA, and under law, including but not limited to for: past/future medical expenses; property loss; lost income and earning capacity; physical pain, mental anguish, emotional distress; and disability. Mr. Montoya prays that the Court award him costs of suit, reasonable and necessary attorney's fees, punitive damages against the individual defendants, all penalties provided by law, and any other relief at law or equity to which Plaintiff is justly entitled.

Respectfully submitted this 7th day of January 2026,

/S/ Kenneth R. Barrett
KENNETH R. BARRETT
3740 Greenbriar #541873
Houston, Texas 77254
Phone: 832 454 3106
Fax: 346 980-4615
SBOT: 01812200
E:KennethRoyceBarrettLaw@yahoo.com
COUNSEL FOR PLAINTIFF HEIVER E. MONTOYA NORENA