## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| HEIVER E. MONTOYA NORENA, | § | |
|     Plaintiff | § | Civil Action No. 4:26-cv-00126 |
| v. | § | |
| | § | |
| THE UNITED STATES OF AMERICA, | § | |
| And JOHN DOES AGENTS A-E | § | |
| In their Individual Capacities | § | |
|     Defendants | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE COURT:

Plaintiff Heiver E. Montoya Norena ("Plaintiff" or "Mr. Montoya") files this First Amended Complaint against Defendant United States of America and John Doe Agents A-E, in their individual capacities, and respectfully alleges as follows:

## I. INTRODUCTION

1. This action arises from the July 29, 2023 detention and use of force against Mr. Montoya by officers of United States Customs and Border Protection ("CBP") at the Progreso Port of Entry in Progreso, Texas.

2. CBP officers physically restrained, injured, and detained him during and after a border inspection encounter despite Mr. Montoya being unarmed, compliant, and non-threatening.

1

3. After officers had effectively completed the operational vehicle-inspection activity and later released the vehicle, officers continued to detain Plaintiff in a separate isolated custodial setting where they employed additional force and injured Mr. Montoya.

4. As a result, he suffered head, arm and shoulder injuries, physical pain, and emotional distress. He has lost income and endures continuing physical limitations as a consequence of the use of unnecessary force against him.

5. Plaintiff initiated this action following administrative closure of a timely filed prior action (4:25-CV-03496) resulting from denial of an in forma pauperis application. Plaintiff invokes equitable tolling to preserve claims timely asserted in the original filing.

## II. PARTIES

6. Plaintiff Heiver E. Montoya Norena is an individual residing in Tomball, Texas.

7. Plaintiff sues Defendant United States of America pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680.

8. The John doe defendants were officers, agents, or employees of United States Customs and Border protection acting under color of federal law and within the scope of federal employment at the time of the conduct alleged herein.

9.    John Doe Defendants were "investigative or law enforcement officers" within the meaning of 28 U. S. C. § 2680 (h), empowered by law to execute searches, seize evidence, and make arrest.

10.    Mr. Montoya is unable to presently identify the individual officers involved because the identifying information, inspection records, detention records, and related evidence remain within the possession and the control of the United States and its agencies.

## III. JURISDICTION AND VENUE

11.    This Court has jurisdiction pursuant to 28 U.S.C. § 1346(b)(1).

12.    Plaintiff exhausted administrative remedies as required by 28 U.S.C. § 2675 before filing this action.

13.    Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1402(b) because the acts and omissions giving rise to this action occurred within this District.

## IV. EXHAUSTION

14.    Plaintiff timely submitted an administrative claim to CBP pursuant to the FTCA.

15.    More than six months passed without final resolution of Plaintiff's claim before this action was filed.

16.     Mr. Montoya has therefore satisfied the prerequisites of 28 U.S.C. § 2675(a).

## V. EQUITABLE TOLLING AND SAVINGS GROUNDS

17.     Plaintiff timely commenced the original action within the applicable limitations period by filing suit in this Court on July 29, 2025.

18.     The Clerk accepted the filing and assigned a civil action number.

19.     The prior action was later administratively closed following denial of Plaintiff's application to proceed in forma pauperis.

20.     The administrative closure was procedural and did not constitute an adjudication on the merits.

21.     Plaintiff recently obtained employment and tendered funds necessary to pay the filing fee on January 6, 2026.

22.     Upon attempting to remit payment through CM/ECF, counsel learned for the first time that the action had been administratively closed.

23.     Plaintiff thereafter acted diligently and promptly to refile this action.

24.     At the time of the original filing and throughout the relevant period, Plaintiff was suffering from substantial physical injuries allegedly caused by Defendants' conduct, including concussion-related symptoms and shoulder injuries that impaired Plaintiff's ability to work and earn income.

25.    Plaintiff worked as a certified HVAC/R repairman whose occupation required physical strength, shoulder mobility, use of tools, and cognitive concentration.

26.    Plaintiff's injuries impaired his ability to perform those job duties and contributed to Plaintiff's financial inability to timely pay the filing fee following denial of the in forma pauperis application.

27.    Defendants had timely notice of Plaintiff's claims through the administrative claim process and suffer no unfair prejudice from equitable tolling.

28.    Equitable tolling therefore preserves Plaintiff's timely asserted claims.

## VI. FACTUAL ALLEGATIONS

### A. The Montoya Family's Trip To Mexico

29.    On July 29, 2023, Plaintiff and his family traveled to Nuevo Progreso, Tamaulipas, Mexico.

30.    Plaintiff traveled there for a dental appointment involving removal of braces and dental cleaning treatment.

31.    After the appointment, the family shopped and ate in Nuevo Progreso before returning to the United States.

32.    At the time of the incident, Plaintiff worked as a certified HVAC/R repairman.

33.    Plaintiff's work required substantial physical strength, mobility of the shoulders and arms, use of tools, and cognitive concentration.

## B. Initial Border Inspection Encounter

34.    Plaintiff and his family returned to the United States through the Progreso Port of Entry in Hidalgo County, Texas.

35.    Plaintiff was traveling with his wife and their minor son in a Volkswagen vehicle.

36.    At the primary inspection booth, officers questioned the family regarding whether they were bringing anything from Mexico into the United States.

37.    Officers scanned Plaintiff's identification documents.

38.    Officers also questioned Plaintiff regarding whether he had attempted to purchase a firearm in the United States.

39.    Plaintiff declined to answer that question.

40.    Officers directed the family to a secondary inspection area.

41.    Plaintiff voluntarily exited the vehicle.

42.    Plaintiff stood near a metal inspection table while Mrs. Montoya assisted their son in unbuckling his seatbelt and exiting the vehicle.

43.    Plaintiff did not threaten officers, physically aggress toward officers, attempt to flee, or otherwise engage in violent conduct.

44. Plaintiff and his family did not impede or object to inspection of the vehicle.

## C. Vehicle Inspection Activity

45. During the encounter, officers searched portions of the vehicle.

46. Plaintiff observed officers searching portions of the vehicle's interior while officers escorted Plaintiff away from the immediate inspection area.

47. Mrs. Montoya observed a female officer looking downward through a vehicle window while standing outside the vehicle.

48. Officers also opened the trunk of the vehicle.

49. By the time officers physically restrain plaintiff, officers already possessed access to the vehicle and its contents and had commenced the inspection activities they intended to perform.

50. Neither plaintiff nor Mrs. Montoya observed officers discover contraband, prohibited goods, firearms, or of other or evidence of customs violations during the vehicle inspection activity.

51. The vehicle was not seized for forfeiture, impounded, or retained for continuing customs- related detention.

52. Upon information and belief, the operational vehicle-inspection activity had materially progressed beyond the point requiring Plaintiff's continued physical

restraint at the inspection table before the later isolated-room detention described herein.

53.    Officers did not impound the vehicle or subject it to prolonged detention.

## D. Physical Restraint Of Plaintiff

54.    Plaintiff complied with the officers' instructions to exit the vehicle and remain in the inspection area.

55.    While Plaintiff stood near the metal inspection table, officers ordered him to move behind the table.

56.    Plaintiff momentarily turned his attention toward his young son while Mrs. Montoya was assisting the child from the vehicle.

57.    Plaintiff did not physically threaten officers or engage in violent conduct.

58.    Plaintiff complied with the with the officers' instructions to exit the vehicle and remain in the inspection area.

59.    Officers did not employ measured or escalating responses before using substantial physical force against plaintiff.

60.    Officers rapidly escalated to physical force despite the absence of active resistance or physical aggression by plaintiff.

61.    Officers then rushed Plaintiff.

62.    Officers grabbed Plaintiff and slammed him chest-first onto the metal table.

63.    Officers handcuffed Plaintiff.

64.    Officers forcefully lifted Plaintiff's restrained arms upward, causing immediate pain and injury to Plaintiff's shoulder, upper body, neck, and wrists.

65.    Plaintiff heard and felt his shoulder pop during the incident.

66.    While Plaintiff was being restrained, officers repeatedly questioned Plaintiff regarding whether he had been drinking and regarding the firearm-purchase issue.

67.    Officers informed Plaintiff that he was "going to be arrested."

68.    Plaintiff repeatedly asked officers why they were hurting him and asked them to stop.

**E. Removal From Inspection Setting**

69.    After restraining Plaintiff, officers removed him from the immediate inspection setting and separated him from his family.

70.    While Plaintiff was being taken away, Mrs. Montoya repeatedly asked officers why Plaintiff was being detained; where officers were taking him; and whether Plaintiff was under arrest.

71.    Officers did not meaningfully answer those questions.

72. Within approximately two to three minutes after Plaintiff was removed from the inspection setting, officers instructed Mrs. Montoya that she needed to leave the premises with the vehicle.

73. Mrs. Montoya then departed the port-of-entry area with the vehicle and the couple's child as directed by officers.

74. The vehicle itself was not impounded and was not subjected to prolonged detention after Plaintiff was removed from the inspection setting.

75. After leaving the area, Mrs. Montoya realized she no longer possessed her identification documents and returned to the port-of-entry area.

76. When Mrs. Montoya requested information regarding Plaintiff's whereabouts and her identification documents, officers informed her that Plaintiff was going to be arrested and instructed her to contact a precinct but did not identify which precinct.

**F. Separate Custodial Detention**

77. After Plaintiff was removed from the inspection setting, officers transported him to a separate isolated room within the facility.

78. Officers confiscated Plaintiff's personal belongings, including jewelry and other personal effects.

79. Plaintiff remained restrained and separated from his family during this detention.

80. During the detention, officers continued questioning Plaintiff regarding whether he had been drinking and regarding the firearm-purchase issue.

81. The continued custodial detention of plaintiff in the isolated room occurred after officers had released the vehicle and directed missus Montoya to leave the premises.

82. No continuing detention of goods, merchandise, or property remained operationally necessary to justify Plaintiff's later custodial detention in the isolated room.

83. The later detention and force directed against Plaintiff were focused upon plaintiff personally rather than upon any continuing detention or inspection of property.

84. The detention continued after officers had released the vehicle and directed Mrs. Montoya to leave the premises.

85. During the detention, officers engaged in additional physical conduct against Plaintiff, including conduct causing injury to Plaintiff's head, shoulder, neck, back, wrists, and upper body.

86. Officers pushed Plaintiff's head into a wall during the detention.

87. Plaintiff suffered severe pain and concussion-related symptoms as a result of the conduct alleged herein.

88. Officers forcibly removed Plaintiff's jewelry and personal belongings during the detention, causing additional injury to Plaintiff's wrists and hands.

89. Plaintiff remained detained for approximately one hour.

90. Plaintiff was never charged with any offense arising from the incident.

## G. Emergency Medical Treatment And Injuries

91. After the detention concluded, Plaintiff requested medical assistance.

92. Plaintiff was transported by ambulance to Knapp Medical Center for emergency evaluation and treatment.

93. Medical personnel documented injuries and symptoms including concussion-related symptoms, right-shoulder injury, abrasions, contusions, wrist injuries, neck pain, and substantial tenderness in the shoulder area.

94. Plaintiff suffered head injuries, shoulder injuries, physical pain, restricted movement, emotional distress, and continuing physical symptoms requiring medical evaluation and treatment.

95. Plaintiff continues to experience pain, physical limitations, emotional distress, and other damages resulting from the incident.

96. Plaintiff's injuries impaired his ability to work and earn income.

## VII. CLAIMS UNDER THE FEDERAL TORT CLAIMS ACT

### A. Assault And Battery

97. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

98.    Officers acting within the course and scope of federal employment intentionally used physical force against Plaintiff.

99.    The force used against Plaintiff exceeded that reasonably necessary under the circumstances.

100.    The United States is liable for the tortious conduct of its employees pursuant to the FTCA.

## B. Negligence

101.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

102.    Federal officers owed Plaintiff duties of reasonable care during detention, restraint, investigation, transportation, and custodial handling.

103.    Officers breached those duties through unreasonable and excessive conduct.

104.    Those breaches proximately caused Plaintiff's injuries and damages.

## C. False Imprisonment

105.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

106.    Officers intentionally restrained and detained Plaintiff without lawful justification beyond the scope reasonably necessary under the circumstances.

107. Plaintiff did not consent to the continued custodial detention alleged herein.

108. The United States is liable under the FTCA for the resulting damages.

## VIII. BIVENS CLAIMS

### A. Excessive Force Against John Doe officers

109. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

110. The John doe officers, acting under color of federal authority, used objectively unreasonable and excessive force against plaintiff.

111. Plaintiff was unarmed, compliant, non-threatening, and not actively resisting officers at the time force was used.

112. The force used against Plaintiff was disproportionate to any legitimate governmental need, particularly in light of Plaintiff's non-resistance, the absence of threats toward officers and his compliance with instructions to exit to the vehicle.

113. The force used against the Plaintiff was disproportionate to any legitimate governmental need and exceeded force reasonably necessary under the circumstances.

114. The officers' conduct violated Plaintiff's rights under the Fourth Amendment to the United States Constitution.

14

115.   As a direct and proximate result of the unconstitutional conduct described herein, Plaintiff suffered injuries and damages as previously alleged.

B. **Unreasonable Seizure/ False Arrest Against John Doe Officers**

116.   Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

117.   The continued attention of plaintiff after the operational vehicle inspection activity had effectively concluded lacked lawful justification.

118.   Plaintiff was detained, restrained, and deprived of liberty without probable cause or other lawful basis sufficient to justify the continued custodial detention alleged herein.

119.   The conduct described herein violated plaintiffs rights under the 4th amendment.

120.   Plaintiff suffered injuries and damages is a direct and proximate result of the unconstitutional conduct described herein.

## IX. DAMAGES

121.   As a result of the conduct alleged herein, Plaintiff suffered:

a)   physical pain and suffering;

b)   mental anguish;

c)   emotional distress;

d)   medical expenses;

e)   physical impairment;

f) loss of income;

g) diminished earning capacity;

h) and other damages recoverable under applicable law.

## X. CONDITIONS PRECEDENT

122. All conditions precedent to Plaintiff's claims for relief have been performed, have occurred, or have been waived.

## XI. JURY DEMAND

123. Plaintiff demands a trial by jury on all issues so triable.

## XII. JOHN DOE DISCOVERY ALLEGATIONS

124. Plaintiff could not presently identify the individual officers responsible for the conduct alleged herein because the relevant identifying information, inspection records use of force records, surveillance materials, detention records and related evidence remain within the possession and control of the United states. Plaintiff will seek limited jurisdictional and identifying discovery as necessary.

## XIII. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that Defendant be cited to appear and answer, and that upon final trial Plaintiff recover judgment against Defendant for damages, costs, interest, and all other relief to which Plaintiff may be justly entitled.

Respectfully submitted,

*/S/Kenneth R. Barrett*

16

KENNETH R. BARRETT
3740 Greenbriar #541873
Houston, Texas 77254
Phone: 832 454 3106
Fax: 346 980-4615
SBOT: 01812200
E: KennethRoyceBarrettLaw@yahoo.com
COUNSEL FOR PLAINTIFF HEIVER E. MONTOYA NORENA

## CERTIFICATE OF SERVICE

I certify that on May 27, 2026, the foregoing was filed and served through the Court's CM/ECF system and emailed to Eric J. Drootman, United States Attorney's Office in McAllen, Texas, who represented to counsel that he is assigned to this case

*s/ Kenneth R. Barrett*

Kenneth R. Barrett

17